UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
TUNDE A. ADEYI,                                                  :   06 CV 3842 (ARR)(LB)
                                                                 :
                              Plaintiff,                         :   NOT FOR ELECTRONIC
                                                                 :   OR PRINT
       -against-                                                 :   PUBLICATION
                                                                 :
UNITED STATES OF AMERICA,                                        :   OPINION AND ORDER
                                                                 :
                              Defendant.                         :
                                                                 :
---------------------------------------------------------------- X

ROSS, United States District Judge:

  Pro se plaintiff, Tunde A. Adeyi, commenced the instant action in May 2006 with the filing of a motion for return of seized property. (Dkt. No. 1.) Presently pending before the court are plaintiff's motion for judgment on the pleadings and defendant's motion for dismissal or summary judgment.

  For the following reasons, the court denies Adeyi's motion and grants in part and denies in part the government's motion to dismiss. Specifically, the court grants the government's motion insofar as sovereign immunity bars Adeyi's claims for relief pursuant to the court's equitable jurisdiction under Rule 41(g), the Administrative Procedure Act, the Federal Tort Claims Act, and the Tucker Act. The court also grants the government's motion insofar as Adeyi's claims is not cognizable under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). However, the court construes Adeyi's claim as a cause of action under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) and, on the record now before the court, denies the government's motion to dismiss that claim on statute of limitations grounds.

1

## BACKGROUND

*Arrest and Conviction*

On March 12, 2001, Adeyi was arrested at J.F.K. Airport after screening of his luggage revealed that he had transported more than 30 kilograms of heroin from Nigeria. On October 17, 2001, following a jury trial, Adeyi was convicted of importing and possessing with intent to distribute heroin in violation of 21 U.S.C. §§ 952 and 841. On March 18, 2005, the court sentenced Adeyi to a term of 156 months imprisonment, followed by five years of supervised release. See United States v. Adeyi, No. 01-CR-351 (ARR) (E.D.N.Y. Mar. 18, 2005) (Dkt. No. 101). Adeyi's conviction was affirmed on appeal. See United States v. Adeyi, 165 Fed. Appx. 944 (2d Cir. 2006), cert. denied, 127 S. Ct. 194 (2006). On January 22, 2007, this court denied Adeyi's motion for relief pursuant to 28 U.S.C. § 2255. See United States v. Adeyi, No. 06-CV-1454 (ARR) (E.D.N.Y. Jan. 22, 2007) (Dkt. No. 16).

*Seizure and Motion for Return of Property*

In the instant action, Adeyi alleges that upon his arrest at J.F.K. Airport on March 12, 2001, government agents seized personal property from him, including: ATM bank cards; credit cards; and hearing-aid cleaning equipment. (Dkt. No. 1.) With his motion for judgment on the pleadings, Adeyi lists additional items of property he claims were seized at the time of his arrest.[1] (See Dkt. No. 6 at ¶¶ 1-7.) Adeyi has submitted a U.S. Customs Service Inventory of Passenger's Personal Property form listing items seized from him and indicating that they were

---

[1] The additional items are jewelry (including gold chains, pendants, diamonds, and a wristwatch); clothes (including leather jackets, shoes); wedding photos and videos; personal letters; his passports; birth certificates for his two children in Nigeria; and other important documents (his social security card; a police report of a 1990 robbery; his license to drive a taxicab; documents relating to land Adeyi inherited in Nigeria from his father; and other land documents). (Dkt. No. 6 at ¶ 1-7.) (Adeyi argues that his son Sulyman was unable to enter the United States because of the loss of his birth certificate. (Dkt. No. 24.))

2

contained in a green "Echolac" suitcase. (See Dkt. No. 6.) Adeyi claims that the inventory form does not list all of the items agents seized from him.[2] (See Dkt. No. 1.) Adeyi also disputes the inventory form's $500 valuation of the items seized, claiming that the hearing aid itself is worth $2,575. (Dkt. No. 6 at ¶ 8.)

Initially, Adeyi sought the return of his property pursuant to Rule 41(g), Fed. R. Crim. Proc. (Dkt. No. 1). By order dated August 23, 2006, the court directed the United States Attorney to respond to Adeyi's motion. (Dkt. No. 2). By letter dated August 28, 2006, Assistant United States Attorney Katya Jestin related that she had been advised by the "United States Immigration and Customs Enforcement Service ('ICE') that the defendant's baggage was destroyed on November 17, 2004" when Adeyi failed to submit, within the required one year period, the paperwork necessary to secure the release of his baggage. (Dkt. No. 4).[3] By Order dated August 28, 2006, the court directed the government to submit appropriate evidentiary submissions in accordance with Rufu v. United States, 20 F.3d 63, 65 (2d Cir. 1994) (per curiam), and to provide Adeyi with notice pursuant to the Local Civil Rules. See Rufu, 20 F.3d at 65 ("[T]he district court was required to take evidence and make factual findings to identify any items still in the possession of the Government and any items that might have been lost."). (Dkt. No. 3).

---

[2] The inventory form indicates seizure of $88.00 in U.S. currency. Adeyi states that the government returned this money to him in March 2001 by certified mail to the Metropolitan Detention Center in Brooklyn. (See Dkt. No. 20 at ¶ 12; Dkt. No. 19 Ex. 1.)

[3] It appears from Adeyi's submissions that he may have learned of the destruction of his property at an earlier date, on November 2, 2005, from a letter from Vivian Shevitz, his appellate counsel. (See Letter from Adeyi to Shevitz dated Nov. 3, 2005, (Dkt. No. 6)).

*Pending Motions*

On September 19, 2006, Adeyi filed a motion for judgment on the pleadings. (Dkt. No. 6.) Having learned of the destruction of his property, Adeyi makes clear in these and subsequent papers that he now seeks actual and punitive damages of $10 million, (Dkt. No. 6 at 4; Dkt. No. 19 at 11), as well as "an opportunity for consequential damages." (Dkt. No. 23 at 2).

Because the government has not filed an answer and the pleadings are therefore not closed, Adeyi's motion is premature. However, in light of his pro se status and the fact that he has presented matters outside the pleadings, the court treats his motion as one for summary judgment. See Fed. R. Civ. P. 12(c); see also Healthcare Ass'n of New York State, Inc. v. Pataki, 471 F.3d 87, 94 (2d Cir. 2006) (treating premature judgment on the pleadings as summary judgment).

On November 8, 2006, the government moved for dismissal or summary judgment. (Dkt. Nos. 13, 17.) The government's submissions indicate that the items seized from Adeyi on March 12, 2001, were administratively forfeited to the government and destroyed because no claim for them was filed. See Deft.'s Mem. of L. at 2 (Dkt. No. 15) (hereinafter "Govt. Mem."); Decl. of Scott Nielsen at ¶¶ 4-6 (Dkt. No. 14) (hereinafter "Nielsen Decl.").

In support of its motion, the government argues that sovereign immunity bars Adeyi's claim for relief because the property Adeyi "seeks has been destroyed, and is thus unavailable for return." (Govt. Mem. 6-7.) The government further argues that Adeyi cannot recover under the Federal Tort Claims Act ("FTCA") because he has not exhausted his administrative remedies, pursuant to 28 U.S.C. § 2675(a), and, moreover, the Second Circuit has held in extremely similar circumstances that the FTCA does not waive sovereign immunity. See Adeleke v. United States,

355 F.3d 144, 153-54 (2d Cir. 2004). (Govt. Mem. 7-9.) In addition, the government argues that (1) the forfeiture should not be set aside pursuant to CAFRA because that act, by its provisions, does not apply to the administrative forfeiture in this case, see Letter from Assistant United States Attorney Kevin Mulry dated 7/3/07, at 2 (Dkt. No. 33) (hereinafter "Govt.'s 7/3/07 Letter"), (2) a claim under the Tucker Act is not available to plaintiff in these circumstances, see Letter from Assistant United States Attorney Kevin Mulry dated 12/7/07, at 2 (Dkt. No. 47) (hereinafter "Govt.'s 12/7/07 Letter"), and (3) a Bivens claim against federal agents is now barred by the statute of limitations, see id. at 1-2.

Adeyi, for his part, argues that the government deprived him of property without due process of law by failing to notify him of the forfeiture; that the government destroyed his property prior to his sentencing and the resolution of his § 2255 motion; and that the government had to return the property to him once its interest in it for use during the criminal proceedings ceased.

## DISCUSSION

*Construing Adeyi's Rule 41(g) Motion*

Adeyi commenced this action by filing a motion for return of property under Fed. R. Crim. Proc. 41(g).[4] Because no criminal proceedings were then pending against Adeyi, the court construes this motion as a civil action. See, e.g., Adeleke, 355 F.3d at 149, 151 ("[W]e continue

---

[4] Rule 41(g) provides:
> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

to adhere to . . . Mora and its progeny insofar as those cases recognize federal equitable jurisdiction to order the return of property pursuant to Rule 41(g) even after the conclusion of criminal proceedings . . . ."); Onwubiko v. United States, 969 F.2d 1392, 1397 (2d Cir. 1992) ("Where criminal proceedings against the movant have already been completed, a district court should treat a rule 41[g] motion as a civil complaint."); Mora v. United States, 955 F.2d 156, 158, 160 (2d Cir. 1992) ("[T]he district court should have liberally construed Mora's petition as a complaint" at law).

Because Adeyi is proceeding pro se, the court must liberally construe his pleadings and submissions to raise the strongest arguments they suggest. Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007).

*Inadequate Notice*

As a threshold matter, the court notes that on the present submissions, it appears that the government did not employ adequate means to provide notice to Adeyi of his right to contest the administrative forfeiture of his property.

Administrative Forfeiture Proceedings

As part of its motion papers, the government has proffered evidence of the steps it took to notify Adeyi of the pending forfeiture of his property – specifically, the declaration of Scott Nielsen, director of the U.S. Customs and Border Protection ("CBP"), Office of Fines, Penalties and Forfeitures at J.F.K. Airport, and appended exhibits. This evidentiary proffer alone suggests that the government took woefully inadequate steps to provide notice to Adeyi.

On November 11, 2004, the government sent a "Final Administrative Action" letter to

6

Adeyi at 1705 Nelson Avenue, #2D, Bronx, NY 10453. (Nielsen Decl. Ex. A.) This letter was intended to notify Adeyi that items seized on March 12, 2001–"black 'Tweed' rollerbag, green 'Echolac' suitcase, cloth sacks from rollerbags"–would be "summarily forfeited to the government as provided for in 19 U.S.C. [§§] 1607, 1608 and 1609." The letter informed Adeyi that he could stop the summary forfeiture proceedings by filing a claim within 20 days, and, unless indigent, posting a cash bond; if no claim were filed by December 1, 2004, the items would be forfeited.

A November 11, 2004, "Notice of Seizure and Intent to Forfeit" form lists the same items as the "Final" letter under the appropriate seizure number and lists several other seizures to be forfeited. (Nielsen Decl. Ex. B.) It is not clear where this notice was published and Nielsen's declaration does nothing more than describe the exhibit. (See Nielsen Decl. ¶ 3.) Perhaps it is the posting notice meant to appear on the CBP's Fines, Penalties & Forfeitures bulletin board, as the letter to Adeyi suggests. (See Nielsen Decl. Ex. A.)

Also attached is an "Order to Destroy and Record of Destruction of Forfeited, Abandoned, or Unclaimed Merchandise." (Nielsen Decl. Ex. C.) This Order, signed on November 1, 2004, directed destruction by the "most cost effective" method. The record of destruction is signed and date-stamped, although the date is illegible. The government's initial response to the instant action stated that Adeyi's "baggage was destroyed on November 17, 2004." (Dkt. No. 4.)

Nielsen simply avers that no claim was received and CBP "no longer has any property seized from plaintiff Tunde A. Adeyi." (Nielsen Decl. ¶ 4, 6.)

Potential Procedural Deficiencies with the Administrative Forfeiture

The court notes that even if Adeyi had filed a claim before the December 1, 2004, deadline set forth in the final notice letter and the posted notice, it might have been too late to recover his property. The court is also troubled by the seeming inadequacy of the government's efforts to provide notice to Adeyi.

Federal courts lack jurisdiction to review the merits of administrative forfeiture decisions. However, federal courts have jurisdiction to determine whether the government provided legally adequate notice of forfeiture. Weng v. United States, 137 F.3d 709, 713 (2d Cir. 1998), abrogated on other grounds by Dusenberry v. United States, 534 U.S. 161 (2002).

The standard for adequate notice under the Due Process Clause derives from Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950). See Dusenberry, 534 U.S. at 167. "[T]he Due Process Clause does not require . . . heroic efforts by the Government," nor does it require that petitioner actually receive notice. Dusenberry, 534 U.S. at 170-71. Rather, the Due Process Clause requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. When notice is a person's due the means employed must be such as one desirous of actually informing the absentee might reasonably adopt." Weng, 137 F.3d at 713 (quoting Mullane, 339 U.S. at 314-15).

Most importantly, for present purposes, notice is not reasonably calculated under all the circumstances to apprise a property owner of the forfeiture if the government knew that the owner was not at the address to which notification was sent. See Dosunmu v. United States, 361 F. Supp. 2d 93, 98 (E.D.N.Y. 2005) (citing cases finding notice not reasonably calculated when

8

sent to home address when government knew person was incarcerated); see also Alli-Balogun v. United States, 281 F.3d 362, 369 (2d Cir. 2002) (forfeiture violated inmate's due process rights because notice sent to one facility after inmate had been transferred by government to another facility); Stefan D. Cassella, Asset Forfeiture Law in the United States, § 4-10 at 167 & n.115 (2007) ("[D]ue process is *not* satisfied if the Government sends the notice to the wrong prison, even if the prisoner was formerly in that facility and the Government's error was made in good faith.") (collecting cases).

In this case, the present submissions indicate that the government knew Adeyi was in custody at the Metropolitan Detention Center ("MDC") in Brooklyn from 2001 to 2005, knew also that 1706 Nelson Avenue, #2D, was not Adeyi's current home address, and yet still sent the "Final Administrative Action" letter to Nelson Avenue.

The record before the court shows that in March 2001, the CBP, the agency responsible for sending notice of the forfeiture to Adeyi and for otherwise handling his property, returned to Adeyi his $88 by certified mail to the MDC. (Adeyi Aff. ¶ 4, Dkt. No. 19; Dkt. No. 19 Ex. 1.) In October 2001, at Adeyi's criminal trial, the Nelson Avenue address was a subject of dispute. Adeyi had listed 1706 Nelson Avenue on his customs declaration. The government called William Santiago, who resided at 1706 Nelson Avenue, #2D, since August 18, 1999, to testify that Adeyi did not live there. (Trial Tr. 74-76.) Adeyi testified that he listed Nelson Avenue on the form because it was the address at which he had lived the longest; he had used it for his green card and so continued to use it for official declarations. (Trial Tr. 253-254.) Adeyi testified that his last known address in New York was on Kruger Avenue in the Bronx. (Trial Tr. 253.) Moreover, in summation, the government argued that Nelson Avenue was not Adeyi's correct

address, nor was it the location where he planned to stay upon his arrival. (Trial Tr. 277.) The government argued this to suggest that Adeyi lied on his customs declaration in order "to avoid detection." Id. Finally, the government candidly admits in a later submission that "CBP records do not indicate that [the] notice [sent to the Nelson Avenue address] was sent to the 3rd Avenue address [stated on the New York State Driver's License seized from him at his arrest] or to the prison where Adeyi was being held." See Govt.'s 7/3/07 Letter at 2.

Under these circumstances, the notice sent to Adeyi appears to be insufficient. The present submissions thus suggest that the administrative forfeiture of Adeyi's property may have violated his due process rights. Because no discovery has been conducted, however, the court reserves judgment on whether the government provided legally adequate notice to satisfy due process.

*Potential Claims for Relief*

If the government violated Adeyi's due process rights by failing to provide adequate notice, the question of what relief is available arises. The government argues that, pursuant to Adeleke v. United States, 355 F.3d 144 (2d Cir. 2004), the court lacks jurisdiction to consider Adeyi's claims because his "property has been destroyed, and is thus unavailable for return." (Govt. Mem. 4-7.)

In Adeleke, the Second Circuit held that, consistent with the principles of sovereign immunity barring suit against the United States absent an "unequivocally expressed" waiver, Rule 41(g) does not waive sovereign immunity with respect to actions for money damages and so equitable jurisdiction under Rule 41(g) does not permit courts to order the government to pay

10

money damages. 355 F.3d 144, 150-51 (2d Cir. 2004). The court in Adeleke then went on to address "at length various statutory bases under which a plaintiff might arguably recover damages for lost property." Bokel v. NYPD Property Clerk Division, No. 06 Civ. 2849, 2007 WL 526615, at *6 (E.D.N.Y. Feb. 13, 2007).

Therefore, consistent with the court's obligation to construe Adeyi's Rule 41(g) motion liberally, and especially in light of the potential Due Process violation, the court shall now address various bases under which Adeyi might state a claim for relief. First, the court addresses the potential avenues that are clearly barred by sovereign immunity - claims under Rule 41(g), Fed. R. Crim. Proc., the Administrative Procedure Act, the Federal Tort Claims Act, and the Tucker Act. The court then turns to two other avenues of relief, the Civil Asset Forfeiture Reform Act ("CAFRA"), which is inapplicable to these proceedings, and a Bivens action, the viability of which has not yet been satisfactorily addressed in this case.

*Claims Barred by Sovereign Immunity*

Equitable Claim for Money Damages Under Rule 41(g)

In Adeleke v. United States, 355 F.3d 144, 151 (2d Cir. 2004), the Second Circuit, squarely held that sovereign immunity bars any claim for money damages under the court's equitable jurisdiction pursuant to Rule 41(g). Thus Adeyi cannot obtain money damages from the United States under that rule.

Claim for Money Damages Under Administrative Procedure Act

As the Second Circuit also pointed out in Adeleke, the sovereign immunity of the United

States precludes a claim for money damages under the Administrative Procedure Act (APA). See Adeleke, 355 F.3d at 152 n.7. Accordingly, Adeyi also cannot state a claim for money damages under the APA.

Federal Tort Claims Act

As the government argues, sovereign immunity bars any claim for relief Adeyi might have under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (See Govt. Mem. 7-9.) The FTCA waives sovereign immunity for certain claims against the government "subject to numerous conditions, each of which must be satisfied for a court to exercise jurisdiction." Adeleke, 355 F.3d at 153.

Adeyi cannot recover under the FTCA because he has not filed an administrative claim with the appropriate federal agency before commencing the instant action. See 28 U.S.C. § 2675(a); Adeleke, 355 F.3d at 153. It is not clear on the present submissions whether Adeyi could still timely file an administrative claim. See 28 U.S.C. § 2401(b) (claim must be presented "within two years after such claim accrues"). More fundamentally, however, the FTCA's waiver of sovereign immunity does not apply to Adeyi's claim because the statute explicitly does not waive sovereign immunity with respect to any claim that, like Adeyi's here, constitutes a "claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs . . . or any other law enforcement officer." 28 U.S.C. § 2680(c).[5]

---

[5]Although CAFRA creates an exception to § 2680(c)'s reinstatement of sovereign immunity, Adeyi cannot avail himself of that exception for the same reasons that prevented Adeleke: he cannot establish that he "was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law." 28 U.S.C. § 2680(c)(4). See generally Adeleke, 355 F.3d at 154 (citing 21 U.S.C. § 853(a) (subjecting to criminal forfeiture, inter alia, "property used [...] in any manner or part, to commit, or to facilitate the commission of," a narcotics felony). Cf. Diaz v. United States, No. 06-5301-cv, -- F.3d --, 2008 WL 495653 (2d

The court finds, therefore, that Adeyi is barred by sovereign immunity from pursuing a claim under the FTCA.

Claims Under the Tucker Act

The Tucker Act waives the sovereign immunity of the United States for non-tort claims, and confers jurisdiction in the Court of Federal Claims over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); see also 28 U.S.C. § 1346(a)(2). The Little Tucker Act confers concurrent jurisdiction upon district courts when the damage claim is $10,000 or less. See id.

As the government points out, however, these statutes create no substantive rights for money damages enforceable against the United States. Rather, "the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." United States v. Mitchell, 463 U.S. 206, 216-217 (1983). The Court of Federal Claims has made it clear that "except for the taking clause of the fifth amendment, the other amendments [to the Constitution] do not require the United States to pay money for their alleged violation." Maracalin v. United States, 52 Fed. Cl. 736, 744 (Fed. Cl. 2002) (citing Elkins v. United States, 229 Ct. Cl. 607, 608 (1981)). Indeed, the Second Circuit has recognized that "the Court of Claims lacks jurisdiction to resolve

---

Cir. Feb. 26, 2008) ("re-waiver of sovereign immunity for a narrow category of forfeiture-related damages claims [...] [not available when plaintiff] was convicted of the crime for which his property was subject to forfeiture," namely the federal currency reporting statute, for which the cash plaintiff was carrying was subject to forfeiture under 31 U.S.C. § 5317(c)).

a claim that property was forfeited unconstitutionally," Polanco v. U.S. Drug Enforcement Administration, 158 F.3d 647, 652 n.3 (2d. Cir. 1998), including a claim against the United States arising out of Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), see id. at 651-52; see also Mendez v. United States, No. 99-cv-3496 (JFK), 2005 WL 1208512, at *3 (S.D.N.Y. May 19, 2005) (claim under Tucker Act based on supposed violation of due process rights of Fifth Amendment not available against the DEA because Bivens does not allow suit against federal agencies). Thus, insofar as Adeyi's claims are grounded on a supposed violation of his due process rights under the Fifth Amendment or on Bivens, the Tucker Act provides him no basis upon which relief can be granted.

### *CAFRA Claim to Set Aside Forfeiture Not Available*

Having reviewed causes of action barred by the United States' sovereign immunity, the court will now consider potential causes of action where sovereign immunity is not directly implicated.

When an administrative forfeiture is effected after August 23, 2000, without notice to the property owner, "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute" is a motion filed under 18 U.S.C. § 983(e). See § 983(e)(5); see also Alli-Balogun, 281 F.3d at 369 n.6 (noting that 18 U.S.C. § 983 applies to forfeitures commenced on or after 120 days from April 25, 2000). As the government points out, however, § 983(e) applies only to "any nonjudicial civil forfeiture proceeding under a civil forfeiture statute," 18 U.S.C. § 983(e)(1), and § 983(i) specifies that as used in this section, the term "civil forfeiture statute [...] does not include [a] provision of law codified in title 19." 18 U.S.C. § 983(e)(i). See also

United States v. One Lucite Ball Containing Lunar Material, 252 F.Supp.2d 1367, 1377-78 n.6 (S.D. Fla. 2003) (explaining that CAFRA does not apply to forfeiture proceedings under Title 19).

In this case, because the administrative forfeiture was carried out pursuant to 19 U.S.C. §§ 1607-09, see Nielsen Decl. Ex. A, CAFRA's provision allowing a claimant to set aside a declaration of forfeiture is not available to plaintiff.

*Money Damages Under* Bivens

Having concluded that Adeyi has no cause of action against the United States, the court notes that Adeyi's only possible avenue of relief may be a claim for money damages under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). "Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446 U.S. 14, 18 (1980). An action for damages under Bivens, although not available against federal agencies, see Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484-86 (1994), is under most circumstances analogous to, and governed by the standards applicable to an action against state actors pursuant to 42 U.S.C. § 1983, see Hartman v. Moore, 547 U.S. 250, 255 n.2 (2006). In New York, both claims are subject to a three-year statute of limitations. See Tapia-Ortiz v. Doe, 171 F.3d 150, 151-52 (2d Cir. 1999).

Notably, the Second Circuit in Adeleke explicitly did not address "the possibility of a Bivens action against any individual defendant" in the circumstances presented here because in

15

Adeleke the plaintiff had conceded that the government had not caused the destruction of his property. Adeleke, 355 F.3d at 151 n.6. Here, by contrast, the government acknowledges responsibility for the destruction of Adeyi's property.

The government's sole attack on the viability of a Bivens claims is the argument that it is untimely because "the property at issue was destroyed more than three years ago, in November 2004." See Govt.'s 12/17/07 Letter, at 2. On the evidence now before the court, the argument that a Bivens action is barred by the statute of limitations is dubious at best.

Although a federal court looks to state law to determine the applicable statute of limitations for bringing a Bivens action, see Tapia-Ortiz v. Doe, 171 F.3d at 151, federal law determines *when* the claim accrues. Kronisch v. United States, 150 F.3d 112, 123 (2d Cir. 1998). Under federal law, a Bivens action accrues when plaintiff "knew or had reason to know of the constitutional injury that is alleged as the basis of the action." Williams v. King, No. 91-CV-4526 (LIG), 1992 WL 368069 (E.D.N.Y. Oct. 27, 1992) (citing Estate of Masselli v. Silverman, 606 F.Supp. 341, 344 (S.D.N.Y. 1985)); see also Polanco, 158 F.3d at 654 (equitable action under APA, for return of property seized without proper notice, accrues when plaintiff "discovered or had reason to discover that his property had been forfeited without sufficient notice"); Pauk v. Bd. of Trustees of the City University of New York, 654 F.2d 856, 859 (2d Cir. 1981) (federal claim accrues when plaintiff "knows or has reason to know" of the injury that is the basis of his action). On the record now before the court, it appears that the earliest date on which Adeyi could have known about the destruction of his property was November 2, 2005, when he received a letter from his appellate counsel stating that she found out that the government had destroyed his property. See Letter from Adeyi Nov. 3, 2005, (Dkt. No. 6);

16

supra n. 3. If this is so, a Bivens action against the proper federal agents instituted today would be timely.[6]

The preceding discussion does not mean Adeyi will necessarily be able to make the showing required under Bivens. Rather, on the present submissions, neither Adeyi nor the government has established that it is entitled to a judgment as a matter of law. The court therefore denies their motions at this time with leave to renew following discovery.

## CONCLUSION

In sum, the court denies Adeyi's motion for summary judgment. The court grants in part and denies in part the government's motion to dismiss. The court grants the government's motion insofar as sovereign immunity bars Adeyi's claims for relief pursuant to the court's equitable jurisdiction under Rule 41(g), the Administrative Procedure Act, the Federal Tort Claims Act, and the Tucker Act. Furthermore, the court dismisses Adeyi's claim insofar as it may be construed as a motion to set aside forfeiture under 18 U.S.C. § 983(e). Finally, the court construes Adeyi's claim as a cause of action under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) and, on the current record, denies the government's motion to dismiss the claim as untimely.

The case is hereby referred to the Honorable Magistrate Judge Lois Bloom to issue an order pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d. Cir. 1997) (per curiam), to ascertain the

---

[6] Because of the evidence suggesting that a Bivens action is timely today, requiring denial of defendant's motion to dismiss on statute of limitations grounds, it is not necessary to address the government's argument that such a claim does not "relate back" to Adeyi's original lawsuit, under the standards set forth in Fed. R. Civ. Proc. 15(c).

full names of the federal agents whom plaintiff seeks to sue, to direct service on these defendants, and to oversee discovery.

SO ORDERED.

/S/
Allyne R. Ross
United States District Judge

Dated: March 21, 2008
Brooklyn, New York

SERVICE LIST:

*Pro Se Plaintiff*

Tunde A. Adeyi
# 55329-053
Federal Correctional Institution Fort Dix (East)
P.O. Box 2000
Fort Dix, NJ 08640

*Attorney for Defendant*
Kevin P. Mulry
Assistant U.S. Attorney
United States Attorneys Office
Eastern District of New York
147 Pierrepont Street, 14th Floor
Brooklyn, NY 11201

cc: Magistrate Judge Bloom