UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

TUNDE A. ADEYI,

                         Plaintiff,

    -against-

UNITED STATES OF AMERICA, et al.,

                         Defendants.

-----------------------------------------------------------------------x

06-CV-3842 (ARR)

NOT FOR PRINT OR
ELECTRONIC
PUBLICATION

AMENDED ORDER

ROSS, United States District Judge:

*Pro se* plaintiff, Tunde A. Adeyi, commenced the instant action in May 2006 with the

filing of a motion for return of seized property. (Dkt. Entry 1.)  Presently pending before the

court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  For the

following reasons, defendants' motion for summary judgment is granted in part and denied in

part.

**BACKGROUND**

A.   Arrest and Conviction

On March 12, 2001, plaintiff was arrested at J.F.K. Airport after screening of his luggage

revealed that he had transported more than 30 kilograms of heroin from Nigeria.  On October 17,

2001, following a jury trial, plaintiff was convicted of importing and possessing with intent to

distribute heroin in violation of 21 U.S.C. § 952 and 841.  On March 18, 2005, the court

sentenced plaintiff to a term of 156 months of imprisonment, followed by five years of

supervised release. See United States v. Adeyi, No. 01-CR-351 (ARR) (E.D.N.Y. Mar. 18, 2005)

(Dkt. No. 101). Plaintiff's conviction was subsequently affirmed on appeal. See United States v.

Adeyi, 165 Fed. Appx. 944 (2d Cir. 2006), cert.denied, 127 S. Ct. 194 (2006). On January 22,

2007, I denied plaintiff's motion for relief pursuant to 28 U.S.C. § 2255. See United States v.

Adeyi, No. 06-CV-1454 (ARR) (E.D.N.Y. Jan. 22, 1007) (Dkt. No. 16).


   B.   Seizure and Destruction of Plaintiff's Property

      Plaintiff alleges that upon his arrest at J.F.K. Airport on March 12, 2001, government

agents seized personal property from him found in a green suitcase and two wallets, including:

plaintiff's hearing aid and hearing-aid cleaning equipment, jewelry (eight rings, two bracelets,

three neck chains), VHS tapes, photographs, and audiotapes from plaintiff's wedding ceremony,

two address books, various pieces of clothing and shoes, birth certificates from his two children

in Nigeria, and other important documents (including documents relating to land inherited from

plaintiff's father, and his license to drive a taxicab). (Pl.'s Rule 56.1 Statement ¶ 10.) At the time

of the seizure, plaintiff filled out a Customs declaration listing his address as 1706 Nelson

Avenue, #2D, Bronx, New York. (Govt.'s Rule 56.1 Statement ¶ 2; Pl.'s Rule 56.1 Statement ¶

1.) Plaintiff, however, asserts that his new home address, 3230 Cruger Avenue, #6K, Bronx,

New York "was stated verbally for immigration records" purposes. (Pl.'s Rule 56.1 Statement ¶

1.) Customs prepared an inventory of plaintiff's personal property, listing the items seized from

him and indicating that that they were contained in a green "Echolac" suitcase. ((Mulry Decl.,

Ex. D ("Inventory").) Plaintiff acknowledges that his hearing aids were returned to him in

prison. (Pl.'s Rule 56.1 Statement ¶ 11; Adeyi Dep. at 44-46.) Plaintiff also acknowledges that

$88.00 was sent to him at the Metropolitan Detention Center in Brooklyn. (Pl.'s Rule 56.1 Statement ¶ 12; Adeyi Dep. at 62.)

On November 11, 2004, United States Customs and Border Protection ("CBP") sent a Final Administrative Action letter to the 1706 Nelson Avenue address. (Mulry Decl., Ex. E (Final Administrative Action Letter).) The letter stated that the items seized from him on March 12, 2001 would be summarily forfeited to the government "as provided for in 19 USC 1607, 1608, and 1609," unless a claim was filed by December 1, 2004. (Mulry Decl., Ex. E.) The letter also cited violations of 21 U.S.C. § 952, 18 U.S.C. § 545, and 19 C.F.R. § 162.45. A copy of the letter was not sent to the 3230 Cruger Avenue address, or to the location of plaintiff's incarceration at the time.

According to Kenneth Schubert, a named defendant and the CBP paralegal specialist who signed the Final Administrative Action Letter,[1] a draft letter was ordinarily prepared by a CBP paralegal or technician for review and signature. (Decl. of Kenneth Schubert ("Schubert Decl."), ¶ 3.) Mr. Schubert would then review the Fines, Penalties and Forfeiture ("FPF") file to determine that the draft letter contained the correct information and would verify that the draft letter contained the address matching the address provided in the incident report for the seizure. (Schubert Decl. ¶ 3.) In the event that Mr. Schubert was aware that a claimant was in prison, his stated practice was to advise the CBP paralegal or technician to prepare a separate draft letter with the correct prison address if notice was not already being sent to that address. (Schubert Decl. ¶ 3.)

---

[1] Kenneth Schubert's signature appears above the name "Ron Simon, Director, Fines, Penalties & Forfeitures." His signature indicates that he was signing for defendant Ron Simon, who at the time was director of FPF. (Schubert Decl. ¶ 2.)

Defendant Sherry Smith, a paralegal specialist with CBP, as well as defendant William Hever, a supervisory paralegal specialist with CBP, initialed a document entitled Order to Destroy and Record of Destruction of Forfeited, Abandoned or Unclaimed Merchandise" ("Order and Record of Destruction"), dated November 1, 2004.[2] (Decl. of Sherry Smith ¶ 2 ("Smith Decl."); Decl. of William Hever ¶ 2 ("Hever Decl."); Mulry Decl., Ex. F. (Order and Record of Destruction).) The stated practice of both Smith and Hever was to sign an order to destroy property only if the property had been forfeited with notice to any potential claimants. (Smith Decl. ¶ 2; Hever Decl. ¶ 2.) Despite this stated practice, however, the government has not explained why the Order and Record of Destruction was signed two weeks prior to the Final Administrative Action letter and a month before plaintiff's deadline for filing a claim. (Pl.'s Rule 56.1 Statement ¶ 16.)

After the order to destroy had been signed, defendants Patrick Armstrong, Dorothy Pappert, and Paul Scaglione participated in identifying the property listed under the heading "Quantity and Description of Merchandise," so that the property could be disposed of pursuant to the Order and Record of Destruction. (Decl. of Patrick Armstrong ¶ 2; Decl. of Dorothy Pappert ¶ 2; Decl. of Paul Scaglione ¶ 2; Murly Decl., Ex. F (Order and Record of Destruction).) On November 17, 2004, prior to the December 1, 2004 deadline for plaintiff to assert a claim, Scaglione and defendants Paul Guastella and Kevin O'Keefe witnessed the destruction of the property listed in the Order and Record of Destruction. (Decl. of Paul Scaglione ¶ 2; Decl. of Paul Guastella ¶ 2; Decl. of Kevin O'Keefe ¶ 2.)

---

[2] Defendant Hever's signature appears under the designation "Signature of Authorizing Customs Officer." His signature indicates that he was signing for defendant Scott J. Neilsen, who at the time was deputy director of FPF. (Hever Decl. ¶ 2.)

C.  Procedural History

Plaintiff commenced this action on May 15, 2006.  Initially, plaintiff sought the return of his property pursuant to Rule 41(g), Fed. R. Crim. Proc. (Dkt. No. 1.)  In an Opinion and Order dated March 21, 2008, I denied plaintiff's motion for judgment on the pleadings, and granted in part and denied in part the government's motion to dismiss. (March 25, 2008 Order, Dkt. No. 54.)  In that opinion, I noted that based on the record, the notice sent to plaintiff appeared to be inadequate and insufficient. (March 25, 2008 Order at 10.)  I accepted the government's argument that plaintiff could not assert a claim under 18 U.S.C. § 983(e), which states that "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute" is a motion filed under the statute, 18 U.S.C. § 983(e)(5), because the administrative forfeiture was carried out pursuant to 19 U.S.C. §§ 1607-09, and CAFRA does not apply to forfeiture proceedings under Title 19. See March 25, 2008 Order at 14-15.  Having reviewed plaintiff's potential claims under the circumstances, I construed plaintiff's claim as a claim under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).  On May 19, 2008, the court directed service of process on the ten individual defendants whose names, signatures, or initials appeared on the Final Administrative Action letter or the Order and Record of Destruction. (May 19, 2008 Order, Dkt. No. 63.)  The court permitted plaintiff to amend the complaint, and a second amended complaint was filed on January 26, 2009. (Dkt. No. 106.)  Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56.

**DISCUSSION**

A.  Standard

A moving party is entitled to summary judgment if, "upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993); see Fed. R. Civ. P. 56(c).  An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986).  The substantive law determines the facts that are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. Proc. 56(e).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48.  Only when it is apparent that no rational finder of fact "could find in favor of the non-moving party because the

6

evidence to support its case is so slight" should summary judgment be granted.  Gallo v.

Prudential Residential Servs. Ltd. Partnership, 22 F.2d 1219, 1223 (2d Cir. 1994).

      *Pro se* complaints are to be construed liberally during the summary judgment phase.

Haines v. Kerner, 404 U.S. 519, 520 (1972). Courts must read a *pro se* litigant's supporting

papers liberally, interpreting them "to raise the strongest arguments that they suggest." Graham

v. Henderson, 89 F.3d 75, 79 (2d Cir.1996) (internal quotation marks omitted). This does not,

however, "relieve [P]laintiff of his duty to meet the requirements necessary to defeat a motion

for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003)

(internal quotation marks omitted).  "[P]roceeding *pro se* does not otherwise relieve a litigant

from the usual requirements of summary judgment, and a *pro se* party's bald assertion,

unsupported by evidence, is not sufficient to overcome a motion for summary judgment."

Monterroso v. Sullivan & Cromwell, LLP, 591 F.Supp.2d 567, 577 (S.D.N.Y. 2008) (internal

quotations omitted).


   B.  The Government's Current Argument under CAFRA

      As explained in the March 25, 2008 Order, when an administrative forfeiture is effected

after August 23, 2000, without notice to the property owner, "the exclusive remedy for seeking

to set aside a declaration of forfeiture under a civil forfeiture statute" is a motion filed under the

Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), codified at 18 U.S.C. § 983(e). See §

983(e); March 25, 2008 Order at 14.  However, § 983(i) specifies that as used in this section, the

term "civil forfeiture statute [ . . .] does not include [a] provision of law codified in title 19." 18

U.S.C. § 983(i); see also United States v. One Lucite Ball Containing Lunar Material, 252

F.Supp.2d 1367, 1377-78 n. 6 (S.D.Fla.2003) (explaining that CAFRA does not apply to

forfeiture proceedings under Title 19).  As stated above, in the March 25, 2008 Order, I accepted

the government's argument that plaintiff could not assert a claim under 18 U.S.C. § 983(e),

because the administrative forfeiture was carried out pursuant to 19 U.S.C. §§ 1607-09, to which

CAFRA does not apply. See March 25, 2008 Order at 14-15.

The government now argues that, despite its earlier assertions, the seizure at issue was

not conducted pursuant to 19 U.S.C. §§ 1607-09, as these summary provisions are procedural

statutes that do not provide a substantive forfeiture authority. (Govt.'s Mem. at 9.)  The

government also argues that the seizure was not conducted pursuant to 19 U.S.C. 1595a, the

provision under which such customs seizures are routinely conducted.  In its motion papers, the

government argues that the seizure was conducted under 18 U.S.C. §545, one of the statutes

referenced in the Final Administrative Action letter. (Govt.'s Mem. at 9.)  The government

asserts that because the seizure was conducted under this statute, it does not fall under the Title

19 exception, and CAFRA remains plaintiff's sole remedy. (Govt.'s Mem. at 9.)  Because a

reading of the statutes did not make clear that the government's seizure of plaintiff's property

was in fact conducted under 18 U.S.C. §545, and because of the lack of clarity in the record, I

issued an order dated January 20, 2010 seeking clarification on which statute provided authority

for the seizure of plaintiff's property. (January 20, 2010 Order, Dkt. No. 183.)

In response, the government states that pursuant to18 U.S.C. § 545, one of the statutes

referenced in the Final Administrative Action letter, merchandise smuggled into the United

States may be forfeited to the United States.  The government further states that pursuant to 18

U.S.C. § 981(a)(1)(C), a statute not referenced in the Final Administrative Action letter, any

property derived from proceeds traceable to a violation of  18 U.S.C. § 545 may be forfeited.

(Govt.'s Letter, Feb. 1, 2010, Dkt. No. 184.)  While this may be true, it does not answer the

question as to what statute applies to the seizure of plaintiff's suitcase, personal items, and personal documents, given that these items are not alleged to have been smuggled merchandise, or property derived from proceeds traceable to the drugs seized by CBP.

The government also states that while 21 U.S.C. § 952, cited in the Final Administrative Action letter, does not have a specific forfeiture provision, 21 U.S.C. § 881(a)(3), a provision not cited in the letter, provides that all property used as container for controlled substances may be forfeited. (Govt.'s Letter, Feb. 1, 2010, Dkt. No. 184.) However, the government cannot now assert, without evidence or documentation, that the seizure of plaintiff's property was conducted pursuant to a statute not cited in any correspondence with plaintiff. Additionally, the government has not shown that 21 U.S.C. § 881 is regularly used by customs agents to seize personal property. Traditionally, authority for customs officers to seize property comes from 19 U.S.C. § 1595a, which authorizes the seizure of "every vessel, vehicle, animal, aircraft, or *other thing* used . . . to facilitate . . . the importation . . . of any article which is being . . . introduced, into the United States contrary to law. . . ." 19 U.S.C. § 1595a (emphasis added); see also Ali v. Federal Bureau of Prisons, 552 U.S. 214, 223 n.5 (2008) (finding that a customs officer's authority to seize contraband derives from 19 U.S.C. § 1595a(c)(1)(C) and disagreeing with the dissent's assertion that during border searches, customs and excise officers "routinely" enforce civil forfeiture laws unrelated to customs or excise, such as 21 U.S.C. § 881).

Because 21 U.S.C. § 881(a)(3) was not cited by the Final Administrative Action letter, and because the government has not shown that the statute clearly provides authority for customs officers to seize personal property, the government has failed to demonstrate that the seizure at issue was conducted under 21 U.S.C. § 881(a)(3). The government has thus failed to establish for the purpose of summary judgment that the Title 19 exception listed in § 983(i) does not apply

9

to the seizure of plaintiff's property. See 18 U.S.C. § 983(i); see also One Lucite Ball Containing

Lunar Material, 252 F.Supp.2d at 1377-78 n. 6.  Accordingly, the government is not entitled to

summary judgment under its CAFRA argument, and I will proceed to plaintiff's claims under

Bivens.


   C.  Plaintiff's Bivens Claims

      Plaintiff claims that defendants deprived him of his property in violation of his due

process rights by destroying his property without first providing adequate notice.  Under Bivens

v. Six Unknown Named Agents, a plaintiff injured by a federal employee's violation of the

plaintiff's constitutional rights is entitled to recover money damages when there is neither a

special factor counselling hesitation nor an equally effective alternative remedy. Bivens, 403

U.S. at 396-97.  The Supreme Court has declined to imply a Bivens action against federal

agencies or federal agents acting in their official capacities. See Federal Deposit Ins. Corp. v.

Meyer, 510 U.S. 471, 484-86 (1994).  However, "Bivens established that the victims of a

constitutional violation by a federal agent have a right to recover damages against the official in

federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446

U.S. 14, 18 (1980).  Plaintiff asserts his claim against individual defendants Schubert, Smith,

Hever, Simon, Neilsen, O'Keefe, Scaglione, Guastella, Pappert, and Armstrong.


      1.  *Defendants Schubert, Smith and Hever*

      Defendants argue that plaintiff's claims against defendants Schubert, Smith and Hever at

most allege acts of negligence, which cannot sustain recovery under Bivens.  Defendants argue

that in order to succeed on his <u>Bivens</u> claim, plaintiff is required to identify intentional or reckless action resulting in a constitutional violation.

Defendants are correct that negligent conduct resulting in an unintended loss of property is insufficient to support a due process claim. <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986). "[W]here a government official is merely negligent in causing [an] injury, no procedure for compensation is constitutionally required." <u>Davidson v. Cannon</u>, 474 U.S. 344, 347 (1986). However, it is not as clear after <u>Daniels</u> and <u>Davidson</u> that defendants' conduct must rise to the level of "reckless" or "intentional" in order to support a procedural due process claim under Section 1983 or <u>Bivens</u>.[3] Decisions following <u>Daniels</u> and <u>Davidson</u> have grappled with due process claims based on recklessness, deliberate indifference, and gross negligence. <u>See</u> 1 M. Schwartz, Section 1983 Litigation § 3.06[A], pp. 3-153 to 3-154 (4th ed. 2004). The Second Circuit has noted that the Supreme Court "has left open the question of whether something less than intentional conduct, such as recklessness or gross negligence on the part of prison officials or others, is enough to trigger the protections of the due process clause . . . ." <u>Morales v. New York State Dept. of Corrections</u>, 842 F.2d 27, 30 (2d Cir. 1988) (citing <u>Daniels</u>, 474 U.S. at 334 n. 3; <u>Barbera v. Smith</u>, 836 F.2d 96, 99 (2d Cir. 1987)). In <u>Morales</u>, the court found that "this circuit has continued to adhere to the position that a state prison guard's deliberate indifference to the consequences of his conduct for those under his control and dependent upon him may support a claim under § 1983." <u>Id</u>. at 30 (citing <u>Bass v. Jackson</u>, 790 F.2d 260, 262-63 (2d Cir. 1986), <u>Gill v. Mooney</u>, 824 F.2d 192, 195 (2d Cir. 1987) (allegation of willful indifference sufficient to withstand motion to dismiss § 1983 claim); <u>Villante v. Department of Corrections</u>,

---

[3] Courts apply the same substantive standards to <u>Bivens</u> and Section 1983 claims. <u>See</u> <u>Tavarez v. Reno</u>, 54 F.3d 109, 110 (2d Cir. 1995) ("federal courts have typically incorporated § 1983 law into <u>Bivens</u> actions"); <u>see also</u> <u>Spinale v. U.S. Dept. of Agriculture</u>, 621 F. Supp. 2d 112, 119-20 (S.D.N.Y. 2009).

786 F.2d 516, 522 (2d Cir. 1986) (deliberate indifference sufficient for § 1983 action, even after

Davidson and Daniels ); McClary v. O'Hare, 786 F.2d 83, 89 n. 6 (2d Cir. 1986)).

Following Morales, Judge Cabranes, then on the District Court for the District of

Connecticut, noted that a "plaintiff must show that the defendant 'deprived' him of life, liberty or

property through deliberate intent, or arguably through 'gross negligence.'" Presnick v. Santoro,

832 F. Supp. 521, 528 (D.Conn. 1993) (citing Dodd v. City of Norwich, 827 F.2d 1, 3 (2d Cir.

1987)).  He further wrote that holding that gross negligence can support a § 1983 claim "would

be consistent with the line of cases in the Circuit involving official suits against municipalities . .

. which distinguish between immunized simple negligence by city authorities and actionable

'gross negligence' or 'deliberate indifference.'" Id. at 528 n. 9 (citations omitted).

The defendants' reliance on County of Sacramento v. Lewis, 523 U.S. 833 (1998) to

suggest that the plaintiff must show intentional conduct on the part of the defendants is

unconvincing.  First, City of Sacramento involved a substantive as opposed to a procedural due

process claim, one arising out of injury sustained during a high speed police chase. 523 U.S. at

837.  Second, in applying a "shocks the conscience" standard to the unique facts before it, the

Court was careful to state that "[w]ether the point of conscience shocking is reached when

injuries are produced . . . following from something more than negligence but "less than

intentional conduct, such as recklessness or 'gross negligence' . . . is a matter for closer calls."

Id. at 849 (citing Daniels,474 U.S. at 334, n. 3).[4]

Defendants point to U-Series Int'l Servs., Ltd. v. United States, 1995 WL 671567

(S.D.N.Y. Nov. 7, 1995), aff'd 104 F.3d 355 (2d Cir. 1996) to suggest that failure to send timely

notice to the plaintiff in a forfeiture action is at most negligent.  In U-Series, however, the

---

[4] Some circuits have foreclosed the use of gross negligence in the § 1983 context. See, e.g., Lewellen v.
Metropolitan Government, 34 F.3d 345 (6th Cir. 1994).

defendants mailed notice to the plaintiff prior to the deadline for submitting a claim, the plaintiff

had actual notice of the forfeiture before the deadline, and defendants did not actually issue a

declaration of forfeiture until approximately two and a half months after the deadline had passed.

U-Series Int'l Servs., Ltd., 1995 WL 671567 at * 1-2.  The court specifically found that

defendants "followed all procedural requirements." Id. at * 6.

Such a finding cannot be made in this case.  The Final Administrative Action letter was

sent to plaintiff on November 11, 2004 at the 1706 Nelson Avenue address. (Mulry Decl., Ex. E.)

However, the record indicates that in March 2001, CBP returned to plaintiff his $88.00 by

certified mail to the Metropolitan Detention Center ("MDC") in Brooklyn, suggesting the

agency's awareness of his location. (Adeyi Aff. ¶ 4, Dkt. No. 19; Dkt. No. 19 Ex. 1.)  In October

2001, at plaintiff's criminal trial, the Nelson Avenue address was a subject of dispute.  Plaintiff

had listed 1706 Nelson Avenue on his customs declaration.  The government called William

Santiago, who resided at 1706 Nelson Avenue, #2D, since August 18, 1999, to testify that

plaintiff did not live there. (Trial Tr. 74-76.)  Plaintiff himself testified that he listed the Nelson

Avenue address on the form because he had lived at the address the longest, and used the address

for his green card and thus continued to use it for official declarations. (Trial Tr. 253-54.)

Plaintiff further testified that his last known address in New York was on Cruger Avenue in the

Bronx. (Trial Tr. 253.)  In summation, the government argued that Nelson Avenue was not

plaintiff's correct address, nor was it the location where he planned to stay upon his arrival.

(Trial Tr. 277.)  The government argued this to suggest that plaintiff lied on his customs

declaration in order "to avoid detection." (Trial Tr. 277.)

The record shows that the agency was aware that the Nelson Avenue address was

incorrect.  But independent of the issue of *where* notice was sent is the issue of *whether* notice

was provided at all. The Order and Record of Destruction was initiated by defendants Hever and

Smith on November 1, 2004, ten days before notice was sent to plaintiff, and an entire month

before the deadline by which plaintiff could asset a claim. (Smith Decl. ¶ 2; Hever Decl. ¶ 2;

Mulry Decl., Ex. F.) Plaintiff's property was destroyed on November 17, 2004, possibly before

notice would even have arrived even if sent to the proper address, and certainly prior to the

December 1, 2004 deadline for plaintiff to assert a claim. (Decl. of Paul Scaglione ¶ 2; Decl. of

Paul Guastella ¶ 2; Decl. of Kevin O'Keefe ¶ 2.)

Defendants Smith and Hever state that their practice was to only sign an order to destroy

property if the property had been forfeited with notice to any potential claimants. (Smith Decl. ¶

2; Hever Decl. ¶ 2.) Despite this stated practice, however, the government has not explained

why the Order and Record of Destruction was signed two weeks prior to the Final

Administrative Action letter and a month before plaintiff's deadline for filing a claim, nor have

they described the specific procedures taken with respect to the signing of the Order. (Pl.'s Rule

56.1 Statement ¶ 16.) While defendants have stated they had "no intention of depriving plaintiff

of notice," (Hever Decl. ¶ 4), their conduct need not rise to the level of "intentional" in order for

plaintiff to succeed on his claim. I need not address whether a finding of "gross negligence" is

sufficient in this circuit, given that based on the record, defendants have not met their burden of

showing the absence of a genuine issue of material fact as to whether their conduct rose to the

level of "deliberate indifference." Because defendants ordered plaintiff's property destroyed

prior to notice being sent, and destroyed the property prior to the deadline for him to respond, I

find that a trier of fact could determine that their conduct constituted "deliberate indifference."

Accordingly, defendants' motion for summary judgment with respect to defendants

Schubert, Smith and Hever is denied.

2. *Defendants Simon and Nielsen*

Defendants claim that they are entitled to summary judgment regarding plaintiff's claims against supervisory defendants Ron Simon, former Director, Fines, Penalties & Forfeitures ("FPF"), and Scott Nielsen, former Deputy Director, FPF.

A defendant must be personally involved in a constitutional deprivation to be liable under Bivens and Section 1983. Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006) (citing Ellis v. Blum, 643 F.2d 68, 85 (2d Cir.1981) (stating that respondeat superior generally does not apply in Bivens-type actions); Black v. United States, 534 F.2d 524, 527-28 (2d Cir.1976) (concluding that Bivens claims, like suits under § 1983, must allege direct and personal responsibility for the unlawful conduct of subordinates)). In Ashcroft v. Iqbal, the Supreme Court recently stated in the motion to dismiss context, that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 129 S.Ct. 1937. Supervisors can be sued individually without direct participation only if they promulgated unconstitutional policies or plans under which action occurred, or otherwise authorized or approved challenged misconduct. Al- Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1066 (2d Cir. 1989); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976); Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

The record shows that defendants Simon and Nielsen did not themselves sign either the Final Administrative Action letter or the Order and Record of Destruction; rather, their subordinates signed the two respective documents on their behalf. (Schubert Decl. ¶ 2; Smith Decl. ¶ 2; Hever Decl. ¶ 2.) Plaintiff has not provided evidence of either Simon or Nielsen's personal involvement in the sending of the Final Administrative Action letter to the incorrect address, or the order to destroy his property prior to notice being sent at all. Nor has plaintiff

shown Simon and Nielsen's involvement in promulgating a policy to destroy property prior to notice being provided.

Accordingly, defendants' motion for summary judgment with respect to defendants Simon and Nielsen is granted.

### 3. *Defendants O'Keefe, Scaglione, Guastella, Pappert and Armstrong*

Defendants also claim that they are entitled to summary judgment with respect to the individual defendants responsible for identifying plaintiff's property and witnessing the property's destruction. Defendants seek to frame plaintiff's claim as only involving the act of sending him the notice of forfeiture, in which they claim defendants O'Keefe, Scaglione, Guastella, Pappert and Armstrong took no part. Thus, defendants claim these defendants cannot be found to have been personally involved in the constitutional deprivation at issue. In the alternative, defendants argue that these five defendants are entitled to qualified immunity for their objectively reasonable reliance on the Order and Record of Destruction.

One issue following <u>Daniels</u> and <u>Davidson</u> is whether, in procedural due process cases, the pertinent conduct is that which results in the deprivation of property, or that which results in the procedural deficiency. <u>See</u> M. Schwartz, Section 1983 Litigation § 3.06[A], pp. 3-153. However, the Supreme Court in <u>Daniels</u> stated in dicta that "[w]e think the relevant action of the prison officials . . . is their deliberate decision to deprive the inmate of good-time credits, not their hypothetically negligent failure to accord him the procedural protections of the Due Process Clause." <u>Daniels</u>, 474 U.S. at 333-34. This language suggests that the relevant action is that which results in the deprivation rather than the failure to accord procedural protections. <u>See</u> M. Schwartz, Section 1983 Litigation § 3.06[A], pp. 3-153; <u>see also</u> <u>Franklin v. Aycock</u>, 795 F.2d

16

1253, 1261-62 (6th Cir.1986).  In this case, that conduct would include not only the order to destroy plaintiff's property as discussed above, but the act of actually identifying and destroying such property as well.

Even where a right is well established, as plaintiff's due process right is here, and a defendant's conduct violates this right, an official may be entitled to qualified immunity if it was objectively reasonable for him to believe that his acts did not violate that right. "In general, public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001) (quoting Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996); see also Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004).  Based on the record, I find that these five defendants were objectively reasonable in relying the Order and Record of Destruction, and are thus entitled to qualified immunity.

Defendants Armstrong, Pappert and Scaglione participated in identifying the property listed under the heading "Quantity and Description of Merchandise" on the Order and Record of Destruction so that the property could be disposed of, and initialed the document on November 16, 2004. (Decl. of Patrick Armstrong ¶ 2; Decl. of Dorothy Pappert ¶ 2; Decl. of Paul Scaglione ¶ 2; Murly Decl., Ex. F (Order and Record of Destruction).)  The order to destroy had already been signed by defendants Hever and Smith on November 1, 2004, and these three defendants had no participation in the sending of notice to plaintiff. (Decl. of Patrick Armstrong ¶ 4; Decl. of Dorothy Pappert ¶ 4; Decl. of Paul Scaglione ¶ 4.)  Plaintiff has not sufficiently shown that these defendants were aware that notice had not been sent until November 11, 2004, or that notice was sent to an incorrect address.  Plaintiff has also failed to show that their practice was to

17

inquire about such notice prior to identifying property for the purpose of destruction. (Pl.'s Opposition to Decl. of Paul Scaglione ¶ 6.) Accordingly, I find that these defendants were objectively reasonable in indentifying the property to be destroyed based on the signed Order and Record of Destruction.

Additionally, defendant Scaglione and defendants Paul Guastella and Kevin O'Keefe witnessed the destruction of the property listed in the Order and Record of Destruction, and signed the document on November 17, 2004 indicating that they had done so. (Decl. of Paul Scaglione ¶ 2; Decl. of Paul Guastella ¶ 2; Decl. of Kevin O'Keefe ¶ 2.) Similarly, plaintiff has not sufficiently shown that these defendants were aware that notice had not been sent until November 11, 2004, were aware that notice was sent to an incorrect address, or that their practice was to inquire about such notice prior to witnessing the destruction of property. (Pl.'s Opposition to Decl. of Paul Guastella ¶ 6.) Accordingly, I find that these defendants were objectively reasonable in witnessing the destruction of plaintiff's property based on the signed Order and Record of Destruction.

Defendants motion for summary judgment with respect to defendants O'Keefe, Scaglione, Guastella, Pappert and Armstrong is therefore granted.


## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted with respect to defendants Simon, Nielsen, O'Keefe, Scaglione, Guastella, Pappert and Armstrong. Defendants' motion for summary judgment with respect to defendants Schubert, Smith, and Hever is denied.

SO ORDERED.

s/ ARR

_____

Allyne R. Ross
United States District Judge


Dated:        February 8, 2010
                 Brooklyn, New York

SERVICE LIST:

**Plaintiff (Pro Se):**

Tunde A. Adeyi
# 55329-053
Federal Correctional Institution Fort Dix (East)
P.O. Box 2000
Fort Dix, NJ 08640

**Defendants**

Kevin Patrick Mulry
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201